UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Aubrey Eugene Bailey, | ) | Civil Action No.  5:14-0248-DCN-KDW |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | ) ) ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.      Relevant Background

A.      Procedural History

On October 6, 2010,[1] Plaintiff protectively filed for DIB under Title II of the Act, 42 U.S.C. §§ 401-433, alleging he became disabled on October 1, 2009. Tr. 124-25. After being denied initially and at the reconsideration level, Tr. 60-67, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 73-74. The ALJ conducted a hearing on July 10, 2012, taking testimony from Plaintiff and Vocational Expert ("VE") Roger Decker. Tr. 30-58. Representing Plaintiff at that hearing was his attorney, J. Greg Tharp. The ALJ denied Plaintiff's

---

[1] The application lists a date of October 7, 2010, but the Disability Determination and Transmittal indicates Plaintiff's filing date as October 6, 2010. Tr. 60.

claim in a decision dated August 15, 2012. Tr. 14-29. Plaintiff requested review of this decision from the Appeals Council, Tr. 12, which denied his request on November 21, 2013, Tr. 1-4, making the ALJ's August 15, 2012 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed January 27, 2014. ECF No. 1.

B.     Plaintiff's Background

Born on April 23, 1964, Plaintiff was 45 years old on his alleged onset date. Tr. 181. He completed four or more years of college and Plaintiff's past relevant work ("PRW") was as an airfield operations specialist in the military from February 1985 until October 2009. Tr. 185. In applying for DIB, Plaintiff listed the following conditions that limit his ability to work: "Diabetes Mellitus Type II, Fatty Liver; Major Depressive Disorder; Deficit Hyperactivity Disorder; Post-traumatic Stress Disorder (PTSD); High Blood Pressure; Thyroid; Gastroesophageal; Sleep Apnea; Degenerative thoracolumbar spine with annular disc bulge; Degenerative change cervical spine; and Diabetes, insomnia, degenerative thoracolumbar spine, Etc." Tr. 184. Plaintiff indicated he stopped working on July 15, 2009 because of his conditions and he retired from the military. Plaintiff received a 100% service-connected disability rating from the Department of Veterans Affairs ("VA"). Tr. 144-77.

C.     Administrative Proceedings

1.     Plaintiff's Testimony

On July 10, 2012, Plaintiff appeared with counsel at an administrative hearing held in Augusta, Georgia and testified regarding his application for DIB. Tr. 30-58. VE Decker also appeared and testified at the hearing. *Id.*

The ALJ noted that Plaintiff's questionnaires were completed by Dr. Cary Diver of the VA. Tr. 36. Plaintiff testified that Dr. Diver is his general physician and he has been seeing him since December 2009. *Id.* The ALJ noted that in Plaintiff's pre-discharge examination Plaintiff stated he was actively seeking employment. Tr. 37. Plaintiff testified that he was looking for employment initially but "started getting worse with the nonsleeping" and he now has problems with arthritis in his throat, which causes pain if he speaks for long periods of time. *Id.* The ALJ inquired into Plaintiff's diagnosis of post-traumatic stress disorder ("PTSD") and determined that it was both service-related and from Plaintiff's own personal experience. Tr. 38. Plaintiff testified that he was taking medication for depression and to help him sleep. Plaintiff stated he was unaware of any side effects because he took the medication at night. *Id.* Plaintiff testified that he was "relatively steady the last couple of months" in managing his diabetes. Tr. 39. The ALJ asked Plaintiff if there was any job he thought he could do. Plaintiff testified that "[t]he amount of time that it takes me to do things and to talk to people, to try to catch my thoughts, it's a problem. I get very aggravated and agitated." *Id.* Plaintiff stated that he felt like he might have a stroke and that sometimes he felt sharp pains in his head. Tr. 39-40. Plaintiff testified that his 16-year-old daughter has a learning disability that requires speech therapy, he takes care of his mother who has lung cancer, and his wife "has depression problems." Tr. 40-42. Plaintiff testified that after he drops he daughter off at school he is with his mother "throughout the entire day because [he has] to run her back and forth" to appointments. Tr. 40. Plaintiff testified that his mother, who lived several miles from him, could cook for herself but that he had to drive her everywhere, including doctors' appointments, and help her clean up. Tr. 41.

Plaintiff testified that in addition to his appointments with Dr. Diver, he also sees Dr. Barfeld and a psychologist, Dr. Lee McKenzie. Tr. 42. Plaintiff also stated that he sees other

doctors for his "gastro problem" and for his heart. *Id.* Plaintiff's attorney asked Plaintiff why he could not work if he was capable of taking care of his mother. Tr. 43. Plaintiff stated that he felt he had a duty to care for his mother, but he still has his underlying problems and has to "bear it." *Id.* Plaintiff testified that he "had a breakdown where the cops had to come to the home." Tr. 44. The police called the VA, and he was given a new therapist. *Id.* Plaintiff stated that in the last year he had "quite a few" medical interventions. He was hospitalized for his heart and for his diabetes, and he sees Dr. McKenzie for his mental problems. Tr. 44-45. Plaintiff testified his mental and physical problems could be divided "50/50" and he has "pain all the time." Tr. 45. On a scale of one to ten, Plaintiff described his pain on good days at "about a five" and bad days well above that. Tr. 46. Plaintiff stated he has 12-to-15 bad days a month and the worst pain, in his spine or throat, could get up to eight or nine on the pain scale. Tr. 47.

In response to the ALJ, Plaintiff stated he has not done any work for pay since leaving military service. Tr. 48. Plaintiff stated he attends church on Sundays and tries to go to the men's meeting at the church on Mondays. *Id.* Plaintiff indicated he drove 20-to-25 minutes to attend the administrative hearing. Tr. 49. Plaintiff stated he owns a computer and uses it regularly to "look up stuff for [his] mom and [his] wife" and he helps his daughter with her schoolwork. *Id.* Plaintiff testified he has an email address and Facebook account but did not know his status. *Id.* Plaintiff stated he does not play video games because he cannot concentrate or sit that long. Tr. 50. Plaintiff stated that he likes to read to relax and mainly reads the Bible. *Id.* Plaintiff testified that doctors have recommended that he not have surgery on his back, but he is unsure what their plans are with regard to the arthritis in his throat. Tr. 51. Plaintiff testified that he has been losing weight and he does not know why. His doctors are concerned with his weight loss and will be administering tests to determine why Plaintiff is losing weight. *Id.*

2.     VE Testimony

VE Decker also testified at the hearing. VE Decker identified Plaintiff's PRW was that of an air operations manager, which would be the civilian title for his work, DOT number 248.387-010, light, SVP of 6, skilled. Tr. 53. The VE noted that the evidence indicated Plaintiff lifted 30 pounds frequently and 100 pounds occasionally so the job "would probably be heavy in his exertional level, or at least medium as he performed the job." Tr. 54.

The ALJ asked the VE to "assume an individual of the same age, education, and work history as [Plaintiff], where such individual is limited to sedentary work and to simple, routine, repetitive tasks and a relatively static work environment. That is to say a work environment with few workplace changes, where such changes are introduced gradually, and where such an individual has no work at unprotected heights or around hazards, and this includes no climbing of ladders, ropes, or scaffolding." Tr. 54. When asked if such an individual could perform Plaintiff's past work, the VE responded in the negative because of the exertional level. The VE opined there would be work at the sedentary, unskilled level based on the specific functional limits, and identified the following jobs: bench hand, DOT number 715.684-026, sedentary, SVP of 2, unskilled, 2,300 jobs in South Carolina, approximately 150,000 in the national economy; table worker, DOT number 739.687-182, sedentary, SVP of 2, unskilled, approximately 6,100 jobs in South Carolina, approximately 740,000 in the national economy; patcher, DOT number 723.687-010, sedentary, SVP of 2, unskilled, 3,000 jobs in South Carolina, approximately 530,000 in the national economy. Tr. 54-55.

The ALJ asked if there was work available if she added the additional requirement that the "individual be allowed to shift positions at will, including shifting from seated position to standing or back again, with less than 10 percent disruption from the workday." Tr. 55. The VE

responded that the individual could perform the jobs he previously listed, but the limitation would "probably result in approximately a 10 percent reduction in the number of jobs available." Tr. 55-56. The ALJ asked if there was work such an individual could perform if the individual was off task for 20 percent of the workday. Tr. 56. The VE responded that "if a person is off task 20 percent of the workday he would not be able to meet the production requirements of work and therefore could not perform any of the jobs that [he] listed, cannot perform any work that exists in the national economy." *Id.* Plaintiff's counsel asked the VE what would be the "most tolerable" absentee rate for the jobs he identified. Tr. 57. The VE stated that "this 20 percent that the Judge has indicated here would be a good suggestion of the absentee rates, which would be one day a week." *Id.*

When asked if he had anything else to bring to the ALJ's attention, Plaintiff stated that he was unsure if it was noted in the record but he has a "very bad memory" and his short term memory is "shot." Tr. 57.

## II.    Discussion

### A.    The ALJ's Findings

In her August 15, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.    The claimant has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.    The claimant has the following severe impairments: plantar fasciitis; ankle spurs; degenerative joint disease; diabetes; gout; degenerative disc disease; anxiety; depression (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can perform only simple, routine, repetitive tasks; he must work in a static work environment (which I define as an environment with few work place changes); he can have no exposure to unprotected heights or hazards.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on April 23, 1964 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2009, through the date of this decision (20 CFR. 404.1520(g)).

Tr. 19-28.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S.

---

impairment is disabling at Step 3).

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

Plaintiff alleges that (1) the ALJ improperly rejected the opinion of his treating physician, Dr. Diver; and (2) the ALJ's mental RFC assessment is inconsistent with opinions of Agency consultants and with the ALJ's finding of Plaintiff's moderate deficits in concentration, persistence, and pace. Pl.'s Br. 2, ECF No. 17. The Commissioner submits that substantial evidence supports the ALJ's assessment of Dr. Diver's opinion and supports the ALJ's mental RFC determination. Def.'s Br. 13, 16; ECF No. 20.

1.      Consideration of Treating Physician's Opinion

Plaintiff argues the ALJ improperly rejected the opinion of his treating physician, Dr.

Diver and instead relied on her own lay opinion. Pl.'s Br. 4. The Commissioner defends the

ALJ's decision arguing the ALJ correctly found Dr. Diver's opinions were inconsistent with, and

unsupported by, substantial evidence in the record. Def.'s Br. 13.

a.      Opinion of Treating Physician Dr. Kerry C. Diver

On August 16, 2011, Dr. Diver provided his opinion regarding Plaintiff's diagnoses and

physical RFC. Tr. 1169-72 (Arthritis Questionnaire). Dr. Diver listed Plaintiff's diagnoses of

lower back pain, knee pain, hand and feet pain, Type II diabetes, gout, fatty liver, PTSD, and

depression and noted Plaintiff's prognosis as "fair." Tr. 1169. From a list of 21 choices asking

him to "identify any positive objective signs," Dr. Diver noted the following three positive

objective signs: reduced grip strength, impaired sleep, and tenderness. *Id.* Dr. Diver noted

Plaintiff was incapable of tolerating "even 'low stress jobs.'" Tr. 1170. Dr. Diver opined Plaintiff

could continuously sit for 10-15 minutes at one time and continuously stand for 10 minutes at

one time. He noted Plaintiff could sit, stand, or walk for less than two hours total during an eight-

hour day, and would "need a job which permits shifting positions at will from sitting, standing or

walking." *Id.* Dr. Diver opined that during an eight-hour workday Plaintiff would need to take

unscheduled breaks every 15-20 minutes and would need to rest an average of 20-30 minutes

before returning to work. Tr. 1171.  Dr. Diver noted Plaintiff could occasionally lift and carry 10

pounds or less and never carry 20 pounds or more. *Id.* He noted Plaintiff would have significant

limitations in doing repetitive reaching, handling, or fingering but he could not opine on the

percentage of time Plaintiff could use his hands/fingers/arms because it "depends on pain." *Id.*

Dr. Diver further opined Plaintiff should avoid exposure to extreme heat or cold; high humidity;

fumes, odors, dusts, gases; cigarette smoke; soldering fluxes; and solvents/cleaners. Tr. 1172. He noted Plaintiff could never twist, stoop (bend), crouch, or climb ladders, but could occasionally climb stairs. *Id.* Dr. Diver also opined that Plaintiff could be expected to miss work more than twice a month due to his impairments or treatment. *Id.*

On the same date Dr. Diver completed a Diabetes Mellitus Questionnaire that provided the same diagnoses and RFC assessment. Tr. 1174-77. He identified Plaintiff's symptoms as fatigue, general malaise, extremity pain and numbness, difficulty walking, muscle weakness, loss of manual dexterity, episodic vision blurriness, sweating, difficulty thinking/concentrating, psychological problems, excessive thirst, rapid heartbeat/chest pain, vascular disease/leg cramping, dizziness/loss of balance, swelling, headaches, and chronic skin infections. Tr. 1174. Dr. Diver noted that Plaintiff was not a malingerer, and that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id.*

b.    ALJ's Consideration of Dr. Diver's Opinion

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed,

longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20 C.F.R. § 404.1527. Treating source medical opinions are entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. As explained in SSR 96-2p,

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p. The Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* In reviewing the ALJ's consideration of the opinions of Plaintiff's physician, the court is focused on whether the ALJ's opinion is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

Here, in making her findings at step four regarding Plaintiff's RFC, the ALJ set forth Plaintiff's medical history of record, reported daily activities, and his testimony, as well as a general summary of the opinions of two state agency consultants, and of Dr. Diver's two August 2011 opinions. Tr. 22-27. In considering Dr. Diver's opinion in the Arthritis Questionnaire the ALJ noted as follows:

> [T]he claimant's treatment history does not support this opinion. In November 209, the claimant's grip strength was measured to be 5/5 (Exhibit 16F/154). Furthermore, there is no record of deficits in grip strength being noted during an examination, which contradicts Dr. Diver's opinion (Exhibits 17F; 18F; 21F). In addition, as noted above, multiple x-rays and MRIs have shown only mild or minimal degenerative changes in the claimant's joints or spine (Exhibits 2F; 3F; 18F; 21F). Therefore, I gave little weight to this opinion.

Tr. 26.  After discussing Dr. Diver's opinion in the Diabetes Questionnaire, the ALJ made the following finding:

> I gave little weight to this opinion because it is not supported by objective findings. There is no record of the claimant experiencing peripheral neuropathy, and doctors have repeatedly found no evidence of diabetic retinopathy (Exhibits 4F/75-78; 10F/33-34). Finally, since the alleged onset date, the claimant has not required hospitalizations for acute aggravations of this condition, and the claimant has even admitted that this condition does not impose any limitations upon him (Exhibit 3F/88).

Tr. 26-27.

Having considered the record evidence and the arguments of the parties as set forth in their briefs, the undersigned is of the opinion that the ALJ did not adequately consider the opinions of Dr. Diver. In discounting Dr. Diver's opinion in the Arthritis Questionnaire, the ALJ focuses on the lack of support in the record for reduced grip strength as a contradiction to the opinion, and further cites to x-rays and MRIs that showed "mild or minimal degenerative changes." Tr. 26. The ALJ does not address Dr. Diver's opinions regarding Plaintiff's functional limitations. The same is true for the opinion in the Diabetes Mellitus Questionnaire. The ALJ

points out that there is no evidence that Plaintiff is experiencing peripheral neuropathy or diabetic retinopathy. However, Dr. Diver did not indicate in the questionnaire that Plaintiff had peripheral neuropathy or retinopathy. The undersigned is unable to determine if substantial evidence supports the ALJ's assessment of Dr. Diver's opinions.

Additionally, Plaintiff asserts the ALJ did not comply with 20 C.F.R. § 404.1527 because she did not consider the factors set forth in that regulation. Pl.'s Br. 10. The Commissioner submits, citing to 56 Fed. Reg. at 36936, that "'not every factor will apply in every case' and 'certain factors . . . will sometimes take precedence over other factors'. . . . In any event, here the ALJ stated that [s]he considered all of the factors in Section 404.1527(d)." Def.'s Br. 13 n.5.

The undersigned finds the ALJ did not provide the proper analysis of Dr. Diver's opinions pursuant to the factors in 20 C.F.R. § 404.1527(d). Before proceeding with the detailed discussion of her RFC assessment, the ALJ stated she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Tr. 22. This is the only reference to her consideration of the factors in § 404.1527(d).

Although the ALJ was not required to assign controlling weight to Dr. Diver's opinions, the ALJ was required consider the medical evidence under the five factors outlined in 20 C.F.R. § 404.1527(c). *See e.g., Johnson*, 434 F.3d at 654 (finding courts evaluate and weigh medical opinions pursuant to the non-exclusive list in 20 C.F.R. § 404.1527); *Vanartsdalen v. Colvin*, No. 5:12–2948–MGL–KDW, 2014 WL 798409, at *10 (D.S.C. Feb. 27, 2014) ("Where the opinions of the treating physician are not given controlling weight, the Commissioner is to evaluate each opinion in light of a series of enumerated factors, including the length of treatment, the nature of the treatment provided, the supportability of the opinion, the consistency of the opinion, and whether the treating physician is specialized."); *Taylor v. Astrue*, No. 4:11–CV–00315, 2012 WL

4479278, at *4 (D.S.C. Sept. 26, 2012) ("If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6)."). Although the Federal Register states, as Commissioner submits, that not every factor will apply in every case, the sentence read in its entirety states: "Even though *we will consider all of the foregoing factors* [examining relationship, treatment relationship, supportability, consistency, specialization] each time we weigh an opinion, not every factor will apply in every case." 56 Fed. Reg. 36932-01 at 36936 (1991) (emphasis added).

The ALJ's analysis is clearly inconsistent with the mandates of the Treating Physician Rule because the ALJ fails to address the factors set forth in 20 C.F.R. § 404.1527. Accordingly, the undersigned finds that remand for further consideration of the record is appropriate. The ALJ should fully discuss all aspects of Dr. Diver's opinions and discuss the weight attributed to it based on the factors set forth in 20 C.F.R. § 404.1527.

### 2.     ALJ's Mental RFC Assessment

Plaintiff also claims the ALJ's mental RFC finding is inconsistent with the findings of the Agency's examining psychologist and non-examining consultants, and the RFC also does not account for the ALJ's own findings.

### a.     Agency Psychologist and Consultants

Upon referral by the South Carolina Department of Vocational Rehabilitation Disability Determination Division, psychologist Robert D. Phillips, Ph.D. completed a mental status evaluation of Plaintiff on June 27, 2011. Tr. 768-70. Dr. Phillips noted that Plaintiff's anxiety appeared "to be more generalized and related to pain and physical limits." Tr. 769. He administered the Folstein Mini-Mental State Exam to Plaintiff who received a total score of 27,

placing him in the normal range. *Id.* Although Plaintiff was unable to copy a simple geometric

shape on paper, Dr. Phillips noted that "[h]is mental awareness appeared to be generally good."

Tr. 770. Dr. Phillips' conclusions stated:

> The claimant did not appear to be malingering or embellishing his symptoms. His reported symptoms and abilities are consistent with what I observed during the evaluation. He is not likely to need any help handling any funds which he might receive.

> [Plaintiff] has a diagnosis of generalized anxiety as he has almost constant high levels of anxiety. This is affecting his general mental state and his cognitive responses. He also has a depressive disorder as he is frequently depressed. This is partially related to his medical problems.

*Id.* Dr. Phillips diagnosed Plaintiff with Generalized Anxiety Disorder and Depressive Disorder,

referenced Plaintiff's "[s]tress from pain, loss of physical ability and effects of medication" and

gave Plaintiff a GAF[3] score of 56. *Id.*

On December 10, 2010, Stanley W. Golon, M.D. completed a Mental Residual

Functional Capacity ("MRFC") Assessment of Plaintiff. Tr. 637-39. In the category of

Understanding and Memory, Dr. Golon noted that Plaintiff was moderately limited in his ability

to remember locations and work-like procedures, and in his ability to understand and remember

---

[3] The Global Assessment of Functioning Scale (GAF) was introduced by the American Psychiatric Association in 1987 within the third edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), a reference publication used to standardize diagnostic categories and conditions. . . . The three areas examined by the GAF are:

   Psychological - obsessions, panic attacks, etc.

   Social and Interpersonal - maintaining friendships, personal hygiene, etc.

   Occupational - work attendance, ability to follow directions, etc.

The GAF scoring system works on a numeric scale from 0-100, broken down into groups of ten.

60-51  Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers).

50-41  Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social or occupational functioning (e.g., no friends).

*See* http://www.seniorhomes.com/p/understanding-the-global-assessment-of-functioning-scale/ (last visited May 4, 2015).

detailed instructions. Tr. 637. In the category of Sustained Concentration and Persistence, Dr. Golon found Plaintiff was moderately limited in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 637-38. In the category of Social Interaction, Dr. Golon noted Plaintiff was moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 638. In all other areas, including the complete category of Adaptation, Dr. Golon determined Plaintiff was not significantly limited. Tr. 637-38.

On July 7, 2011, Medical Consultant Edward Waller, Ph.D. completed an MRFC Assessment of Plaintiff. Tr. 786-88. Consultant Waller found Plaintiff was not significantly limited in all areas in the Understanding and Memory category. Tr. 786. In the category of Sustained Concentration and Persistence he found Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 786-87. In the category of Social Interaction he found Plaintiff was moderately limited in his ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and in

the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 787. In all other areas and in the category of Adaption, Consultant Waller found Plaintiff was not significantly limited. Consultant Waller concluded the following in his functional capacity assessment:

> [Plaintiff] is able to understand and remember short and simple instructions and is capable of performing simple tasks without special supervision. He is capable of maintaining a regular work schedule, but may miss an occasional workday due to depression [not otherwise specified] and [generalized anxiety disorder]. He would perform better in a job setting that does not require ongoing interaction with the public. He can make simple work related decisions, request assistance from others, and use available transportation. He can adhere to basic standards of hygiene and safety.

Tr. 788.

The ALJ determined that Plaintiff's mental health treatment records did not support Plaintiff's allegations. Tr. 25. The ALJ noted that Plaintiff has never required inpatient treatment for his mental health problems and mental status examinations were "largely unremarkable, as they have not shown deficits in concentration and memory." *Id.* Referring to Dr. Phillips' examination the ALJ noted that Plaintiff "had no problems following simple instructions, he was able to complete serial sevens, and he achieved a normal score on the Folstein Mini Mental Status examination." *Id.* The ALJ considered Plaintiff's GAF scores, but found them "not dispositive of the issue of disability." *Id.* The ALJ also noted that Plaintiff's reported daily activities show that he "is not only able to act in a fairly independent manner, but that he is also able to act as a caregiver for some of his family members. This demonstrates that he maintains the mental capacity to work and shows that he can maintain a schedule." Tr. 25-26. The ALJ noted that "state psychological consultants concluded that the claimant retains the capacity for low stress, simple, repetitive work related activities with limited contact with others." Tr. 26. The ALJ gave "great weight to this opinion because it is generally consistent with the claimant's

treatment history" and "consistent with Dr. Phillips examination, as he noted that the claimant can perform simple tasks." *Id.* However, the ALJ found that the "limitation of contact with others is not supported by the record. The claimant has indicated that he maintains regular social contact with friends and family, and he testified that he goes to church on a regular basis." *Id.*

Plaintiff does not dispute that the ALJ may accept some parts of an opinion and reject others, but Plaintiff asserts the ALJ's finding is not well-founded because it is based on statements made by Plaintiff in a function report and at the administrative hearing from which the ALJ "cherry-pick[ed]" evidence. Pl.'s Br. 15-16. Plaintiff suggests that the ALJ rejected the opinions of the state agency consultants and that the ALJ's finding that Plaintiff "has no social limitations whatsoever is clearly not supported by substantial evidence." *Id.* at 17. The Commissioner argues that substantial evidence supports the ALJ's mental RFC assessment and that the ALJ reasonably weighed the opinions of that state agency psychological consultants. Def.'s Br. 16-19.

Here, the ALJ considered the entire record, and substantial evidence supports her determination to give great weight to the portion of the consultants' opinions that was consistent with Dr. Phillips examination and to discount the portion regarding Plaintiff's social contact that was inconsistent with the record and Plaintiff's own testimony. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record . . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

The ALJ specifically noted that Plaintiff drove to the hearing, indicated he went to church twice a week, had a Facebook account, took care of his mother and daughter, cleaned the house,

did laundry, prepared meals, took his children to school and doctor's appointments, took his mother to her appointments, managed his finances, spoke daily with friends or family, and visited a friend weekly. Tr. 25. The undersigned agrees with the Commissioner that the "ALJ provided legitimate reasons why, in accordance with the controlling rulings and regulations, he accorded only partial weight to the state agency psychological consultant's opinions." Def.'s Br. 19. The ALJ gave specific reasons for the weight given to agency consultants' opinions, and those reasons are supported by substantial evidence. Accordingly, this allegation of error is without merit.

### b.    ALJ's mental health findings

Plaintiff asserts that the ALJ found that he suffers from moderate deficiencies of concentration, persistence and/or pace but her mental RFC for "simple, routine, repetitive tasks" in a static work environment omits any reference to those deficits. Pl.'s Br. 17-18. Plaintiff contends the ALJ did not assess all of his individual impairments and limitations as required by SSR 96-8p. *Id.* at 18. The Commissioner asserts that the ALJ's finding regarding moderate deficiencies in concentration, persistence, and pace was "solely for severity and listings purposes" and was "not an RFC assessment." Def.'s Br. 21.

The ALJ determined that Plaintiff "can perform only simple, routine, repetitive tasks; he must work in a static work environment (which [she] define[d] as an environment with few work place changes)[.]" Tr. 22. The ALJ noted the state psychological consultants' conclusion that Plaintiff "retains the capacity for low stress, simple, repetitive work related activities with limited contact with others" and gave that opinion great weight. Tr. 26. However, the ALJ gave little weight to Dr. Diver's opinions that Plaintiff's conditions would cause pain and symptoms severe enough to interfere with his concentration and attention. *Id.* In a recent Fourth Circuit

opinion, the court agreed with other circuits that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court determined that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Here, although the ALJ's RFC finding was appropriate based on the consultants' opinion as to his ability to *perform simple tasks*, the ALJ's RFC does not account for Plaintiff's limitations in concentration, persistence, or pace as to his ability to *stay on task*. Accordingly, the undersigned is unable to determine if substantial evidence supports the ALJ's RFC assessment. In addition to the undersigned's recommendation that the ALJ revisit the opinions of Dr. Diver, she should also consider Plaintiff's mental limitations with regard to concentration, persistence, and/or pace. The undersigned notes that it is possible the ALJ's determination on remand could be that Plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [Plaintiff's RFC]." *Mascio*, 780 F.3d at 638. The ALJ's decision as currently stated is not clear on this point.

III.    Conclusion and Recommendation

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as discussed within.

22

IT IS SO RECOMMENDED.

May 5, 2015                                      Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**